

The following constitutes the order of the Court.
Signed: April 26, 2024

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SHIVASHNI D. KUMAR,<br><br>Debtor. | Case No.  23-40010 CN<br><br>Chapter 7 |
| FAZLI MULA,<br><br>Plaintiff,<br><br>vs.<br><br>SHIVASHNI KUMAR,<br><br>Defendants. | Adversary No. 23-4008 CN<br><br>**MEMORANDUM DECISION AND ORDER DETERMING DISCHARGABILITY OF DEBT** |

On March 11, 2024, the court conducted a one-day trial in this adversary proceeding. All appearances were noted on the record. Plaintiff Fazli Mula ("Plaintiff") seeks a determination that a "lawsuit" that he filed against Defendant Shivashni Kumar ("Defendant") in Alameda County Superior Court is excepted from discharge under Bankruptcy Code § 523(a)(6).[1]  Plaintiff also requests that this court determine that

---

[1] Section 523(a)(6) provides that a debtor may not discharge a **debt** for willful and malicious injury by the debtor to another entity or to the property of another entity.  11 U.S.C. § 523(a)(6) (emphasis added).  A lawsuit is not a debt, and the court presumes that Plaintiff's non-dischargeable claim is based on the allegations which he asserted in the

sanctions imposed against Defendant by the Alameda County Superior Court in the amount of $4,120 are also non-dischargeable under § 523(a)(6). [2] The following constitutes this court's findings of fact and conclusions of law under Fed.R.Civ.P. 52(a)(1), made applicable here by Fed.R.Bankr.P. 7052.

**FINDINGS OF FACT**

The evidence introduced at trial and the resulting record is *de minimis*. Plaintiff only called himself as a witness and his counsel moved a single document into evidence and sought and obtained judicial notice of three other documents. Plaintiff's evidence binder contained several other documents, but Plaintiff did not move them into evidence. On the other side, Defendant called three witnesses and introduced five documents into evidence. While the court gives some grace because of the Defendant's *pro se* status, her testimony was at times evasive and not entirely credible, and her exhibits were not particularly helpful. Defendant's two other witnesses did provide some context to the relationship between Plaintiff and Defendant, but their testimony otherwise was not directly relevant to the issues at hand. Quantity of evidence does not always translate to quality. Here, however, the limited amount of evidence hampered this court's ability to make anything other than bare bones findings of fact.

In July 2020, Plaintiff rented a unit located at 23032 Ida Lane, Hayward, California from Defendant (the "Property"). [3] The Property contained three rental units and a house occupied by the Defendant and her family. Plaintiff initially agreed to pay $1,100 per month as rent, and the parties increased this by $100 when Plaintiff allowed Defendant to park his car in the Property's driveway. Plaintiff testified that this arrangement remained in place until October 2020, when Defendant allowed a different tenant to park in the

---

Alameda County Superior Court. Debtor's Chapter 7 stayed the Alameda County Superior Court litigation, and this trial was Plaintiff's opportunity to establish his claim and demonstrate that it is nondischargable.

[2] Plaintiff's Complaint also included a claim that these sanctions were fines that were non-dischargable under Bankruptcy Code §523(a)(7). However, Plaintiff did not address the claim in his Trial Brief and appears to have abandoned it.

[3] Plaintiff testified that he signed a lease for the unit but despite multiple requests, Defendant never provided him with a copy.

driveway but still demanded that Plaintiff continue to pay the additional $100 per month in rent. The parking issue became contentious, and Defendant testified that Plaintiff began to act very aggressively toward her – culminating in Defendant seeking a restraining order against Plaintiff for an incident that allegedly occurred on October 23, 2020.[4] Def. Exh. G.

On October 24, 2020, Binish Baskaran (Defendant's live-in boyfriend ("Baskaran")) informed Plaintiff that his rent for November and all subsequent months was being increased to $1,500 per month because Plaintiff was now sharing the unit with his two brothers. Plaintiff refused to pay the increased amount, asserting that he had a month-to-month lease and was entitled to 30-days notice before any rent increase, and that he could not afford the increased rent. On October 25, 2020, Defendant caused the internet, water and electricity to the unit to be turned off,[5] and on October 27, 2020, Defendant served Plaintiff with a 3-day notice to pay rent or quit. Plaintiff stayed in the unit without utilities until November 9, 2020. On the morning of November 9, 2020, Plaintiff showered at a local 24-Hour Fitness health club and, when he returned, found that a chain lock had been placed on the unit's door. Pl. Exh. 6-3. Plaintiff did not have a key to the chain lock and was effectively denied access to the unit from this point forward. Plaintiff testified that Defendant never restored the utilities or returned possession of the unit.[6] Plaintiff

---

[4] Defendant did not file a request for a restraining order until November 5, 2020. Def. Exh. G.

[5] Defendant denied that she turned off the utilities and water. The court finds Plaintiff's testimony to be more credible on this point. First, the utilities were shut off the day after Baskaran attempted to raise the rent and Plaintiff said he would not pay it. Second, Plaintiff testified that he was required to move his brothers to his friend's house because they were attending school online and required internet access, which had been shut off. And finally, Plaintiff testified that he was required to shower at 24-Hour Fitness, which is consistent with the lack of water service. In response, Defendant and Baskaran testified that Defendant would not have turned off the unit's utilities because their house and the unit were all connected to the same utilities and turning off Plaintiff's utilities would have turned off the utilities to Defendant's home. In support, Defendant admitted her utility bills into evidence. These bills, however, were of limited "utility" because they only showed that that Defendant incurred utility charges before, during and after the period at issue. They did not address the critical factual question of whether Defendant could have turned off Plaintiff's utilities without affecting the other rental units or her residence.

[6] At trial, Plaintiff's counsel requested that the court take judicial notice of an

further testified that he lacked the income to rent other premises and was forced to live in his car from November 9, 2020, until February 1, 2021 (at which time he was finally able to lease another apartment).

Plaintiff commenced his Alameda County Superior Court litigation against Defendant and Baskaran on November 16, 2020. Plaintiff, however, never introduced his Superior Court complaint into evidence, and the court is thus unaware of the exact claims that he asserted against them. It appears, however, that Defendant and Baskaran failed to respond to Plaintiff's discovery requests, and the Superior Court issued an order in October 2022 that a) required Defendant and Baskaran to appear for depositions and produce documents, and b) levied sanctions of $2,060 against them for their recalcitrance. Pl. Exh. 2. In December 2022, the Superior Court entered a second order granting Plaintiff's request for terminating sanctions which a) struck Defendant and Baskaran's answer to Plaintiff's complaint, b) dismissed Defendant and Baskaran's cross-complaint against Plaintiff, and c) levied additional sanctions of $2,060 against Defendant and Baskaran. Pl. Exh. 1. While this second order instructed Plaintiff to file a Request for Entry of Default Judgment, Plaintiff alleges that Defendant filed for bankruptcy before he could do so.

**CONCLUSIONS OF LAW**

**11 U.S.C. § 523(a)(6)**

Plaintiff claims that he is entitled to a non-dischargable judgment under Bankruptcy Code § 523(a)(6), which precludes a debtor from discharging debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11

---

Alameda County Superior Court order dated November 23, 2020, which, on its face, stated that Defendant was required to return possession of the unit to Defendant and to restore his utilities and water. The court granted the request to take judicial notice. If counsel's intent was to use this order to demonstrate his client's lockout and loss of utilities, his reliance is misplaced. There is a substantive evidentiary divide between requests for judicial notice and the entry of a document into evidence. A court may take judicial notice of the "documents filed in other courts. . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Cabardo v. Patacsil (In re Patacsil)*, 2023 WL 2278596 *1 (Bankr. E.D. Cal. Feb. 28, 2023) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991)). Judicial notice of the Superior Court order only establishes the existence of the litigation and the order. It does not establish that Defendant terminated the utilities or locked Plaintiff out.

U.S.C. § 523(a)(6). Plaintiff must prove his claim for relief by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The "willful" and "malicious" prongs are conjunctive and therefore are analyzed separately. *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1105-06 (9th Cir. 2005) (citations omitted). In the Ninth Circuit, an injury is "willful" if the debtor has a subjective motive to inflict the injury or believed that injury was substantially certain to occur because of their conduct. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). A court may consider circumstantial evidence to establish what the debtor knew when she acted and is not constrained by what a debtor admits she knew. *In re Sicroff*, 401 F.3d at 1106 (citing *In re Su*, 290 F.3d at 1146 n.6).

Plaintiff has established by a preponderance of the evidence that Defendant turned off his utilities and locked him out of the unit. The denial of utilities and water made staying at the unit untenable and the lock-out made accessing the unit impossible. The question, then, is whether Defendant had the subjective motive to inflict the injury. The evidence shows she did. The relationship between Defendant and Plaintiff had become contentious. Parking was an ongoing issue and Defendant testified that Plaintiff began acting aggressively toward her, which led Plaintiff to obtain a restraining order against him. The day after that the restraining order incident, Baskaran told Plaintiff about the rent increase that would be effective with the November rent (which was due in one week). This evidence collectively and persuasively demonstrates that Defendant intended to terminate Plaintiff's occupancy and opted for self-help to accomplish this goal (instead of complying with state eviction law). These constituted willful acts under § 523(a)(6).

A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (citation omitted). "Within the plain meaning of this definition, it is the wrongful act that must be committed intentionally rather than the injury itself." *In re Sicroff*, 401 F.3d at 1106 (citation omitted). The injury-producing conduct must also be tortious to be excepted from discharge under § 523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). "Conduct is not tortious under

§ 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is only tortious if it constitutes a tort under state law." *Id.* at 1041 (citations omitted).

Defendant's clear intent was to terminate Plaintiff's occupancy of the unit. Under California law, a landlord who seeks to terminate a lease and evict a tenant must file an unlawful detainer action or an ordinary suit for breach of contract. *Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.*, 185 Cal.App.4th 744, 749-50 (Cal.Ct.App. 2010). There is no evidence that Defendant pursued either of those remedies. In addition, California Civil Code § 789.3 prohibits a landlord from: (1) terminating utility services for the purpose of terminating a tenancy; and (2) preventing a tenant from gaining access to the property by changing the locks or using a bootlock or any other similar method or device. Cal. Civ. Code §§ 789.3(a) and (b)(1).[7] Defendant's actions violated both provisions, were wrongful, intentional, and necessarily injured Plaintiff. While Plaintiff's conduct may have justified Defendant's restraining order, they did not give her free license to resort to self-help eviction remedies.

Finally, Defendant's actions were tortious under California law. In California, a warranty of habitability is implied in every residential lease, and a landlord's failure to maintain premises in a "lawful state of habitability" is tortious. *Ghazaryan v. Shabazian*, 2018 WL 6190347, *4 (C.D. Cal. Aug. 2, 2018) (citing *Green v. Superior Court*, 10 Cal.

---

[7] Section 789.3 provides, in relevant part,

[A] landlord shall not with the intent to terminate the occupancy under any lease . . . of property used by a tenant as his residence willfully cause, directly or indirectly, the interruption or termination of any utility service furnished the tenant, including, but not limited to, water, heat, light, electricity, gas, telephone, elevator, or refrigeration, whether or not the utility service is under the control of the landlord.

[In] addition, a landlord shall not, with intent to terminate the occupancy under any lease . . . of property used by a tenant as his or her residence, willfully:
[P]revent the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device[.]

Cal. Civ. Code § 789.3(a) and (b)(1) (West 2024).

3d 616, 619-20 (1974) (*en banc*)); *Stoiber v. Honeychuck*, 101 Cal.App.3d 903, 918-19 (Cal.Ct.App. 1980). California Civil Code § 1941.1 provides that a rental unit that lacks running water or electricity is uninhabitable. Cal.Civ.Code §§ 1941.1(a)(3) and (5) (West 2024). By purposefully terminating utility services to the unit, Defendant tortiously violated her obligations under California law.

Accordingly, Plaintiff has proven by a preponderance of the evidence that Defendant's conduct was willful and malicious, and that the resulting damages constitute a nondischargable claim under § 523(a)(6). The next question is the amount of the debt – in the form of damages - that is nondischargable.

**Damages**

Plaintiff's complaint alleges that his nondischargable damages consist of a $90,000 judgment and two sanctions awards totaling $4,120, all of which were obtained in the Alameda County litigation. While Plaintiff referenced this litigation during trial, he did not introduce his complaint or any relevant Superior Court order into evidence. Moreover, Defendant filed her underlying Chapter 7 before Plaintiff could obtain a default judgment from the Superior Court. Therefore, there is no judgment to give preclusive effect to. Without a judgment and having failed to introduce the sanction orders into evidence, Plaintiff was required to otherwise establish the existence of these sanction awards, and he failed to do so.[8] Thus, the court declines to find that the sanctions awards are non-dischargeable.

Plaintiff asserted in his Trial Brief that he is also entitled to non-dischargeable damages under California Civil Code § 789.3. The court agrees. Defendant violated §§ 789.3(a) and (b)(1), and Civil Code § 789.3(c) provides that any landlord who violates this section **shall** be liable for "actual damages of the tenant" and "[a]n amount not to exceed one hundred dollars ($100) for each day or part thereof the landlord remains in violation of this section. . . . [I]n no event shall less than two hundred fifty dollars ($250)

---

[8] As explained above, Plaintiff's counsel opted for the procedural shortcut of requesting that the court take judicial notice of the sanction orders. This maneuver did not have the desired results of establishing Plaintiff's non-dischargeable damages.

be awarded for each separate cause of action." Cal.Civ.Code §§ 789.3(c)(1) and (2) (West 2024). At trial, Plaintiff did not assert or quantify any actual damages. Thus, the court declines to award actual damages under Civil Code § 789.3(c)(1). However, Plaintiff did testify that Defendant turned off the utilities to the unit on October 25, 2020, and locked Plaintiff out on November 7, 2020. Plaintiff further testified that the utilities were never restored and that he lived in his car until he found a new apartment on February 1, 2021. Plaintiff had no utilities and/or no access to the unit for 98 days. This court therefore finds that Plaintiff is entitled to $9,800 in damages under Civil Code § 798.3(c)(2) and these damages are non-dischargeable under Bankruptcy Code § 523(a)(6).[9]

Plaintiff asserts that he is entitled to recover his attorney's fees under California Civil Code § 789.3(d), which provides that in "any action under subdivision (c) the court shall award reasonable attorney's fees to the prevailing party." If Plaintiff intends to seek fees, he should file an appropriate motion for attorney's fees under Federal Rule of Bankruptcy Procedure 7054.

For the foregoing reasons, the court finds that the debt in the amount of $9,800, plus any attorney fees that are subsequently awarded, are nondischargeable under 11 U.S.C. § 523(a)(6). A separate judgment shall issue.

***END OF MEMORANDUM DECISION***

---

[9] In his trial brief Plaintiff's counsel asserts that damages of $100 per day should be awarded from November 1, 2020, through the date of trial. This request is perplexing. Plaintiff testified that the utilities were turned off on October 25, 2020. Pursuant to Civil Code § 789.3(a), the $100/day penalties would begin running on that day. Assuming for the sake of argument that the penalties did not start running until Plaintiff was locked out, that date would be November 9, 2020. November 1, 2020 appears to be an arbitrary date and the court declines to adopt it. Similarly perplexing is Plaintiff's counsel's assertion that it is appropriate for the court to award penalties through the date of trial. Plaintiff testified that he secured a new apartment as of February 1, 2021. The court declines to punish Defendant well past the date when the harm to Plaintiff was effectively terminated by his securing replacement housing.

Adversary No. 23-4008 CN

**COURT SERVICE LIST**

**Shivashni Kumar**
23032 Ida Lane
Hayward, CA 94541

Other recipients are ECF participants